## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| JASPREET KAUR ATTARIWALA | ) | Bankruptcy Case No. 19-828-ELG |
| Debtor | ) | Chapter 13 |
| BIOCONVERGENCE LLC, | ) | |
| d/b/a/ SINGOTA SOLUTIONS | ) | |
| Appellant | ) | |
| v. | ) | Civil Action No. 23-499 (CKK) |
| JASPREET KAUR ATTARIWALA | ) | |
| Appellee | ) | |

## MEMORANDUM OPINION
(April 26, 2024)

This matter is before this Court on an appeal from a decision by the United States Bankruptcy Court for the District of Columbia ("Bankruptcy Court"), specifically, the Order Overruling [Appellant's] Objection to Confirmation ("Objection Order") and Order Confirming [the Chapter 13] Plan ("Confirming Order") entered on February 3, 2023, which constitutes a final judgment. *In re Fam.*, 645 B.R. 1, 8 (Bankr. D.D.C. 2022). Pending before this Court is Appellant BioConvergence, LLC d/b/a/ Singota Solutions' [10-1] Corrected Brief ("Singota Br."); Appellee Jaspreet Kaur Attariwala's [13] Brief ("Attariwala Br."); and Appellant's [15] Reply Brief ("Reply").[1] Upon consideration of the briefs by the parties, the relevant legal authorities, and the entire record in this case, the Court shall AFFIRM the Bankruptcy Court's Order Overruling

---

[1] In connection with this bankruptcy appeal, the Court considered the briefs by the parties as well as the Bankruptcy Orders, docketed as part of the Notice of Appeal, ECF No. 1, and the Bankruptcy Appeal Record, docketed at ECF No. 3. All references to documents on the electronic case filing system include references to the page numbers assigned by the ECF system, and in cases where the parties cited to their own page numbers, the Court has substituted the electronic case filing system page numbers.

Objection and Order Confirming Plan, for the reasons explained in detail below. A separate Order accompanies this Memorandum Opinion.

## I. FACTUAL BACKGROUND

The Objection Order from which the appeal is taken sets forth a detailed description of the unusual procedural history in this case, and as such, that description of procedural events is incorporated by reference herein, specifically from the time of the Debtor's filing of a voluntary Chapter 13 bankruptcy petition on December 17, 2019, through the 2022 confirmation hearing. *See* Objection Order, ECF No. 1, at 6-13. For purposes of establishing context, the Court highlights several points below.

### A. Pre-bankruptcy Litigation

At the time the bankruptcy case was filed, Appellant BioConvergence, doing business as Singota Solutions ("Singota"), was involved in litigation with Jaspreet Attariwala ("Ms. Attariwala") in the United States District Court for the Southern District of Indiana (the "Indiana Litigation"). Ms. Attariwala was employed previously by Singota, from September 2015 through December 2018, and she was a senior business development manager there when she accepted a new job with one of Singota's competitors, Emergent BioSolutions, Inc. ("Emergent"). Singota filed suit against Ms. Attariwala in state court in Indiana on February 27, 2019, alleging that she breached the covenants of her employment contract by taking Singota's trade secrets and other confidential and proprietary information. Ms. Attariwala counterclaimed for commissions she claimed were owing to her. On April 30, 2019, Ms. Attariwala filed for removal to federal court, which was granted, and later that year, she filed for bankruptcy. The Indiana Litigation is ongoing, with Singota having been granted relief from a stay to enable a determination of liability and damages.

2

**B. Bankruptcy Litigation**

Ms. Attariwala filed a voluntary petition under Chapter 13 on December 17, 2019.  Her initial proposed plan was filed on January 12, 2020, and Singota objected to the proposed plan on February 3, 2020, and shortly thereafter issued discovery on the plan.  Ms. Attariwala filed an amended plan (the "Plan") on March 16, 2020, which provides for payments of $300.00 over a period of 60 months, with proposed pro rata distributions to unsecured creditors, and direct payments on her secured obligations (mortgage, car).  Singota objected to confirmation of the Plan, pursuant to Section 1325 of the Bankruptcy Code, 11 U.S.C. Sections 101-1532, on grounds that: (1) filing of the petition was not in good faith, Section 1325(a)(7); (2) the Debtor would not be able to comply with the Plan, Section 1325(a)(6); and (3) the Plan did not meet the best interests of creditors test, Section 1325(a)(4).  The Bankruptcy Court held a preliminary confirmation hearing on June 20, 2020, and set an evidentiary hearing for August 21, 2020 ("2020 Confirmation Hearing") before the Honorable Martin Teel.  At that hearing, Ms. Attariwala was the only witness; Singota argued against confirmation while the Trustee did not object to confirmation of the Plan and took no position on other issues.  Judge Teel issued an extensive Oral Ruling at the conclusion of the 2020 Confirmation Hearing, and he found that the Plan met the requirements of Section 1325 and ordered confirmation.

On September 4, 2020, the Honorable Elizabeth L. Gunn was sworn in as a bankruptcy judge to replace Judge Teel, who retired and took senior status.  On September 8, 2020, the Trustee filed a recommendation regarding confirmation, which was delayed when Singota filed a motion to stay entry of the Order confirming the Plan and requested discovery.  The Bankruptcy Court entered a Consent Order on the motion to stay and motion to compel discovery (which included Ms. Attariwala's deposition).  After discovery and additional motions for extensions of time, on

3

December 10, 2021, Ms. Attariwala filed a motion to conclude the confirmation hearing, which was again objected to by Singota. After some delays attributable to the parties, a confirmation hearing was set eventually for January 14, 2022, but Singota moved to continue that date. This resulted in a June 2, 2022 hearing on the motion to continue. That motion to continue was denied, and a continued confirmation hearing commenced on that date and concluded ultimately on August 19, 2022 (collectively, the "2022 Confirmation Hearing"). Ms. Attariwala, Singota, and the Trustee were permitted to submit post-hearing briefs on the issue of "good faith" pursuant to 11 U.S.C. §1325(a)(7), and the matter was taken under advisement.

On February 3, 2023, the Bankruptcy Court entered its Order Overruling Objection to Confirmation and Order Confirming Plan, which respectively overruled Singota's objection to the confirmation of Ms. Attariwala's Chapter 13 Plan and confirmed the Plan.

**II. LEGAL STANDARD**

A district court reviews a bankruptcy court's fact findings for clear error, while legal conclusions are reviewed *de novo*. *In re Optical Technologies*, 246 F.3d 1332, 1335 (11th Cir. 2001); *In re Thomas*, 883 F.2d 991, 994 (11th Cir. 1989). Furthermore, "[w]hen a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding is reviewed *de novo*." *In re Stanley*, 224 Fed. App'x 343, 346 (5th Cir. 2007) (internal citations and quotations omitted); *Stone v. Viegelahn (In re Stone)*, 814 Fed. App'x 857, 858 (5th Cir. 2020) (issues of law are reviewed *de novo*).

The burden of proof is on the party that seeks to reverse the bankruptcy court's holding, and that "party must show that the court's holding was clearly erroneous as to the assessment of the facts . . . and not simply that another conclusion could have been reached." *In re Johnson*, 236 B.R.510, 518 (D.D.C. 1999). A finding of fact is "clearly erroneous" when the reviewing court on

4

the entire record is left with the definite and firm conviction that a mistake has been committed, even though there may be some evidence to support such finding of fact. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985); *Foskey v. Plus Properties, LLC*, 437 B.R. 1, 9 (D.D.C. 2010) (Kollar-Kotelly, J.). As such, the "decision must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Akers v. Windward Capital Corp.* (*In re Akers*), 485 B.R. 479, 482 (D.D.C. 2012) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

"The [reviewing] court may consider documents or objective evidence which contradict a witness' story, or take notice that a story is internally inconsistent or so facially implausible that a reasonable fact finder would not credit it." *In re McGovern*, 297 B.R. 650, 655 (S.D. Fla. 2023) (citation omitted). The reviewing court may not reverse however simply because it takes a different view of the evidence or would have decided differently. *Anderson*, 470 U.S. at 573. Instead, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Meyer v. Lepe* (*In re Lepe*), 470 B.R. 851 (B.A.P. 9th Cir. 2012) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400-401 (1990)).

Determining a debtor's good faith in proposing a bankruptcy plan is deemed a factual finding reviewable under the clearly erroneous standard. *Handeem v. LeMaire*, 898 F.2d 1346, 1350 (8th Cir. 1990). "Questions regarding interpretation of the Bankruptcy Code, like any other question of statutory interpretation, in contrast, are questions of law which are properly reviewed *de novo*." *In re McGovern*, 297 B.R. at 655 (citing *In re Hart*, 328 F.3d 45 (1st Cir. 2003)). Accordingly, a district court "reviews *de novo* the bankruptcy court's threshold legal interpretation of the Chapter 13 "good faith" requirements and reviews the bankruptcy court's factual findings under the clearly erroneous standard . . . to determine whether [a debtor] filed and proposed [a]

Chapter 13 plan in good faith." *Id.*

### III. ANALYSIS

The issue before this Court is whether the Bankruptcy Court correctly found that Ms. Attariwala filed her bankruptcy case in good faith, when taking into consideration the totality of the circumstances. The "pervasive element of 'good faith' is described as 'one of the central, perhaps the most important confirmation findings to be made by the court in any Chapter 13 case.'" *In re McGovern*, 297 B.R. at 655 (quoting *In re Kull*, 12 B.R. 654, 658 (S.D. Ga. 1981), *aff'd sub. nom, In re Kitchens*, 702 F.2d 885 (11th Cir. 1983)). And the filing of a Chapter 13 petition in bad faith may constitute cause for dismissal under 11 U.S.C. §1307(c). *See In re Love*, 957 F.2d 1350, 1354-55 (7th Cir. 1992). To confirm a Chapter 13 bankruptcy plan, a debtor must satisfy two tests of "good faith," as set out in the Bankruptcy Code. *See* 11 U.S.C. §§1325(a)(3) (requiring good faith in the filing of the plan), (a)(7) (requiring good faith in the filing of the bankruptcy petition).

#### A. Legal Interpretation of Good Faith Requirements

In this Circuit, the controlling standard for finding good faith in a Chapter 13 bankruptcy case is set out in *Barnes v. Whelan*, 689 F.2d 193, 200 (D.C. Cir. 1982), wherein the appellate court stated "adhere[nce] to the traditional meaning of 'good faith' as honesty of intention." That standard is applicable today. *In re Wise*, 476 B.R. 653, 666 (Bankr. D.C. 2012).

Ms. Attariwala notes that the *Barnes* case was decided prior to the adoption of Code Section 1325(a)(7) (added in 2005, as part of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8 (October 17, 2005)). While BAPCPA did not include legislative history or other guidance for interpreting "good faith," courts have agreed generally that good faith is to be determined in the context of the totality of the circumstances. *See, e.g., In re Bradley*, 567 B.R. 231, 236 (Bankr. D. Me. 2017); *In re Rodriguez*, 487 B. R. 275, 283 (Bankr. D.N.M. 2013); *In re Jongsma*, 402 B.R.

858, 876 (Bankr. N.D. Ind. 2009). Because good faith is undefined, the "inquiry is a fact intensive determination," *In re Love*, 957 F.2d at 1355, and courts engage in a "multi-faceted analysis" that is applied on a case-by-case basis. *In re Virden*, 279 B.R. 401, 407-409 (Bankr. D. Mass. 2002). "Whether this balancing of equities is called moralistic, judging, or evaluating, it is exactly what the courts have been left with under the ambiguous requirement of good faith." *In re Dicey*, 312 B.R. 456, 459 (Bankr. D.N.H. 2004); *see also In re Young*, No. 1-12-bk-06245 (RNO), 2013 WL 6223831, *3-*7 (Bankr. M.D. Pa. 2013) (courts determine good faith under section 1325(a)(3) and (a)(7) by considering the totality of the circumstances and holistically balancing all relevant factors).

In this case, the Bankruptcy Court adopted the approach of *In re Colston*, 539 B.R. 738 (Bankr. W.D. Va. 2015), and analyzed the following factors to assess Ms. Attariwala's good faith in filing her petition for purposes of Section 1325(a)(7):

> (i) the percentage of proposed repayment to creditors; (ii) the debtor's financial situation; (iii) the period of time over which creditors will receive payments; (iv) the debtor's employment history, and current and future employment prospects; (v) the nature and amount of unsecured claims; (vi) the debtor's past bankruptcy filings; (vii) the debtor's honesty in disclosing facts of the case; (viii) the nature of the debtor's pre-petition conduct that gave rise to the case; (ix) whether the debts would be dischargeable in a Chapter 7 proceeding; and (x) any other unusual or exceptional problems the debtor faces.

2020 Confirmation Hrg. Transcript ("Tr."), ECF No. 3-1, at 44:9-25; *see also* Objection Order, ECF No. 1, at 34 (citing *In re Colston*, 539 B.R. 738, 747 (Bankr. W.D. Va. 2015)).[2] The debtor bears the burden of proof at confirmation, including as to proving by a preponderance of the evidence that a plan is proposed in good faith. *Id.* at 746. The parties herein do not challenge the legal standard that was used to gauge good faith, and accordingly, this Court's review focuses on the Bankruptcy Court's determination of Ms.

---

[2] Judge Teel noted that Singota relied upon the *In re Colston* case. 2020 Confirmation Hrg. Tr., ECF No. 3-1, at 44:9, and in his Oral Ruling, he set out the 10 factors considered therein. *Id.* at 289:9-25

Attariwala's good faith, which is a factual issue, reviewable for clear error. *Stone v. Viegelahn* (*In re Stone*), 814 Fed. App'x. 857, 858 (5th Cir. 2020).

### B. Arguments Raised by Singota STOPPED HERE

### 1. Contempt of Indiana Court Orders

Singota alleges first that the Bankruptcy Court erred in failing to give weight to the debtor's contempt of Expenses Orders [a Pay Order and a Contempt Order] in its analysis of whether the bankruptcy filing was in good faith.[3]  In support of this allegation, Singota engages in a protracted discussion regarding Ms. Attariwala being "in contempt of the Expenses Orders in the Indiana Litigation at the time she filed her petition initiating this bankruptcy case." Singota Br., ECF No. 10-1, at 45.  The Court notes that the history of this underlying dispute was discussed in detail in the Objection Order, ECF No. 1, at 21-29 (which contains citations to the underlying record).  The Expenses Orders were put in place by the Indiana State Court and then revisited by the Indiana Federal Court, which vacated the State Court's Default Judgment Order.

With regard to Ms. Attariwala's alleged failed to abide by the Indiana court orders, this Court agrees that "Singota does not ascribe error, such as if the court below failed to recognize, or weigh, Ms. Attariwala's pre-bankruptcy actions." Attariwala Br., ECF No. 13, at 19.  As appellant, Singota has the burden of demonstrating error by the Bankruptcy Court, but instead of pointing to error, Singota's discussion of this issue merely attempts to relitigate this dispute of whether Ms. Attariwala complied with Expenses Orders, or she could have complied, or she provided evidence in support of non-compliance.

---

[3] The Pay Order and Contempt Order were imposed by the Indiana State Court, and both relate to Ms. Attariwala's obligations to fund computer forensic work performed by Ms. Green.

**2. Lack of Good Faith in filing the bankruptcy petition**

Singota's second argument for overturning the Bankruptcy Court orders is based on allegations that the Bankruptcy Court erred in finding that the debtor's bankruptcy filing was in good faith. As stated previously herein, the Bankruptcy Court considered the totality of the circumstances when gauging Ms. Attariwala's good faith. *See In re Colston,* 539 B.R. 738, 747 (Bankr. W.D. Va. 2015) (setting forth 10 factors to be considered). Judge Gunn noted that, in Judge Teel's Oral Ruling, the analysis of good faith under Sections 1325(a)(3) and Section 1325(a)(7) was "combined." Objection Order, ECF No. 1, at 32; *see also* Oral Ruling [2020 Confirmation Hrg. Tr.], ECF No. 3-1, at 288:13-16 ("I'll turn now to the issue of good faith, both good faith in filing the case and good faith in proposing the plan - - one a requirement under Section 1325(a)(3), the other, Section 1325(a)(7).") Judge Gunn, however, undertook a separate analysis of good faith under Section 1325(a)(7). *See* Objection Order, ECF No. 1, at 32 (finding that "Congress must have intended the courts to conduct a separate and distinct analysis [to] determine if "the action of the debtor in filing the petition was in good faith.") (citation omitted); *see also In re Powers*, 554 B.R. 41, 59 (Bankr. N.D.N.Y. 2016) ("Section 1325(a)(3) tests the reasonableness of the plan and the sincerity of the debtor with respect to that particular plan [while] §1325(a)(7) tests whether the filing is fundamentally fair and in a manner that complies with the spirit the Code . . . .")

Judge Gunn found that:

On a practical level, several of the factors identified by courts to evaluate the totality of the circumstances analysis for "good faith" under §1325(a)(3) are equally applicable to an analysis under §1325(a)(7). *In re De Rua*, Case No. 09-17529-B-13, 2009 Bankr. LEXIS 4497, *6 (Bankr. C.D. Cal. Oct. 14, 2009). Factors identified by courts include the motivation of the debtor in the sincerity of filing chapter 13, the debtor's degree of effort in seeking rehabilitation, the frequency with which the debtor has filed for bankruptcy relief, the circumstances under which the debtor contracted their debts, and the debtor's good faith in dealing with creditors. *See In re Powers*, 554 B.R. at 59; *accord In re*

10

The Court notes that the Bankruptcy Court did address Ms. Attariwala's pre-bankruptcy actions as an element in their analysis of good faith.   *See* Oral Ruling [Transcript of 2020 Confirmation Hearing], ECF No. 3-1, at 253, 261 (explaining that the debt Ms. Attariwala had when she filed for bankruptcy, after settlement negotiations broke down, included attorney's fees, a court order to pay Ms. Green, debt to her parents, and credit card debt), at 293 (the Bankruptcy Court commenting that the "Debtor had a genuine intention in filing the case to deal with her debts, to try to obtain a discharge of those debts through Chapter 13"). Judge Teel recognized that Ms. Attariwala "ha[d] engaged in misconduct in the state court litigation and increased the claims that have been asserted against her," and he did not condone that misconduct, but he found credible her testimony that she did not file the bankruptcy "to thwart Singota." *Id.* at 294. Judge Teel concluded that "it's obvious the Debtor is in financial distress and that the nature of her debts doesn't change the fact that she's entitled to attempt to obtain a discharge of those debts by making Chapter 13 plan payments and completing the plan." *Id.* at 295.

Similarly, Judge Gunn explained that:

> For purposes of this case and the question of confirmation, the question is the nature and character of the Debtor's conduct giving rise to the filing of her petition on the Petition Date.  One factor is her conduct in the Indiana Litigation which resulted, in part, in out of the ordinary expenses (legal fees and court ordered payments).  Judge Teel addressed the allegations of the characterization of the Debtor's actions in the Indiana Litigation, and nothing has changed with his evaluation that while the Court does not condone the conduct, and that her debts are arguably much higher as a result, the Debtor is nevertheless in need of financial restructuring.

Objection Order, ECF No. 1, at 38.  A review of the record in this case demonstrates that the Bankruptcy Court acknowledged and factored into its good faith determination Ms. Attariwala's actions in connection with the Indiana Litigation.  Accordingly, Singota's proffer that Ms. Attariwala failed to abide by Indiana court orders fails as a ground to overturn the Bankruptcy Court Orders.

*Gutierrez*, 633 B.R. 768, 802-803 (Bankr. S.D. Tex. 2021). These factors are substantially similar to those found in the *Colston* good faith analysis[.]

Objection Order, ECF No. l, at 33-34. As such, Judge Gunn found that, drawing from the ten *Colston* factors to determine good faith pursuant to Section 1325(a)(3), eight were "applicable" in the analysis of good faith for purposes of Section 1325(a)(7). Objection Order, ECF No. 1, at 34. More specifically, these are: (1) the debtor's financial situation; (2) debtor's employment history and prospects; (3) the nature and amount of unsecured claims; (4) debtor's past bankruptcy filings; (5) debtor's honesty in disclosing facts; (6) the nature of pre-petition conduct; (7) whether debts would be dischargeable in a Chapter 7 proceeding; and (8) any other unusual or exceptional problems faced by the debtor. These eight factors, which are challenged by Singota, are discussed below, along with a summary of the Bankruptcy Court's findings as to these factors, and this Court's analysis to determine if there was clear error by the Bankruptcy Court.

### a. Financial Situation

Singota contends that the Bankruptcy Court made a "significant factual error in its initial oral order regarding Attariwala's financial situation at the time she filed her petition" when Judge Teel found that she was *without employment*" at that time. Singota Br., ECF No. 10-1, at 56 (emphasis in original); Reply, ECF No. 15, at 6. Singota claims that this finding is "clearly erroneous," as Ms. Attariwala was still employed when her petition was filed. Singota Br., ECF No. 10-1, at 56-57. Ms. Attariwala indicates that while she had not officially lost her employment on the day the bankruptcy petition was filed, "as a result of Singota's October 10, 2019 motion for injunctive relief she knew she was at grave risk of being terminated by Emergent." Attariwala Br., ECF No. 13, at 21.

Singota asserts that "[b]y failing initially to recognize that Attariwala *was still employed* when she filed her Chapter 13 petition, the Bankruptcy Court failed to take account of a key fact that was materially relevant to Attariwala's intentions in filing her bankruptcy case" [to try to use the automatic stay to prevent

loss of her job]. Reply, ECF No. 15, at 9.   This argument involves conjecture by Singota as to the motivation for the bankruptcy filing. *But see* Oral Ruling [2020 Confirmation Hrg. Tr.], ECF No. 3-1, at 294:6-10 (noting that the preliminary injunction filing "certainly suggests that [Ms. Attariwala] has engaged in misconduct in the state court litigation and increased claims that have been asserted against her," but the "Debtor testified today that she did not file the bankruptcy case to thwart Singota").   And, in the instant case, the bankruptcy filing did not in fact prevent the loss of employment.

The Court notes that Judge Teel's misstatement regarding the timing of Ms. Attariwala's termination of employment was addressed specifically by Judge Gunn, who noted that "[t]echnically the Debtor was employed on the [December 17, 2019] Petition Date but was terminated on [December 19, 2019,] the first full day of the case." Objection Order, ECF No. 1, at 29 n.21.   Judge Gunn found that the difference was immaterial and without effect as to the findings and conclusions reached by Judge Teel. The Court agrees with Judge Gunn's statement that the timing difference was not material, and as such, this factual error by Judge Teel regarding Ms. Attariwala's financial situation does not warrant reversal of confirmation of the Chapter 13 plan.

**b. Employment History and Prospects**

On December 18, 2019, the Indiana court entered an injunction barring Ms. Attariwala from working at Emergent. Attariwala Br., ECF No. 13, at 21 & n.1 (noting that the Indiana court was unaware of the bankruptcy filing and automatic stay, but the Bankruptcy Court retroactively annulled the stay to allow the order to remain in effect).   In his Oral Ruling, Judge Teel indicated that Ms. Attariwala was "currently unemployed" and "hoping to obtain future employment," but she had not yet "been able to secure employment."   2020 Confirmation Hrg. Tr., ECF No. 3-1, at 293:16-22.   Judge Teel also noted that "a creditor can [argue] for amendment of the plan if the Debtor's financial circumstances change dramatically." *Id.* at 293:19-21.

12

Singota asserts that the Bankruptcy Court "apparently failed to recognize that the preliminary injunction barring Attariwala from working in the biotech industry was modified on March 4, 2020, to allow Attariwala to return to work within that industry." Singota Br., ECF No. 10-1, at 58 (referencing Order Modifying Preliminary Injunction [S.D. Inc. Doc. 156]).  Ms. Attariwala points out that "Singota did not argue that point [in] its Post-Hearing Brief . . . and may not now ascribe error to a point that it did not argue below." Attariwala Br., ECF No. 13, at 22.   This Court agrees with that assessment.   Moreover, Judge Gunn concluded that "the language in the Preliminary Injunction allowing for automatic reinstatement of the injunction inherently impacts [Ms. Attariwala's] employability [and] [u]ntil [it] is completely vacated or otherwise disposed of, the Court finds the Debtor's future employment prospects in her former industry are minimal or virtually nonexistent." Objection Order, ECF No. 1, at 35.   Judge Gunn went on to comment further that "[t]he pending probable diminution in earning capacity as of the petition date and actual postpetition diminution supports the Debtor's good faith in filing this case."   *Id.*[4] Accordingly, Ms. Attariwala's employment history and prospects were considered by the Bankruptcy Court in its analysis of good faith.

The balance of Singota's argument regarding this "employment history and prospects factor" repeats its argument regarding Ms. Attariwala's financial situation, which was addressed in the previous subsection herein.  Accordingly, this Court finds unconvincing Singota's argument that the Bankruptcy Court erred in finding good faith because Judge Teel was unaware of modification of the Preliminary Injunction, which would have permitted Ms. Attariwala to return to work in the biotech industry.   That

---

[4] Judge Gunn noted that, since the 2020 Confirmation Hearing, Ms. Attariwala had found partial employment as a real estate agent, but "her income is significantly less than prepetition and so minimal that it appears to be insufficient even to require a modification to her chapter 13 plan." Objection Order, ECF No. 1, at 35 (citations omitted).

awareness in and of itself, is not the basis for clear error.  Ms. Attariwala's employment history (and her new job as a realtor) and the effect of the Preliminary Injunction (hindering her employment opportunities in the biotech field) were both considered when the Bankruptcy Court approved the Chapter 13 Plan and overruled Singota's objections, and accordingly, there is no clear error regarding application of the "employment history and prospects" factor.

### c. Nature and Amount of Unsecured Claims

Singota argues that the Bankruptcy Court "also overlooked the fact that Attariwala's bankruptcy filing is, in essence, a two-party dispute," Singota Br., ECF No. 10-1, at 60, and that "[an] indication of bad faith is using the automatic stay as a litigation tactic in a two-party dispute." *In re Posner*, 610 B.R. 586, 591 (Bankr. N.D. Ill. 2019) (citation omitted).  In support of this argument, Singota string cites several cases that found lack of good faith where the debtor's motive was to avoid payment to a single primary creditor; *see e.g., In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007) ("We have also specifically held that 'intention to avoid a large single debt' is properly a factor in the bad faith inquiry.") (citation omitted).

In this case, however, Singota acknowledges that "Attariwala scheduled several alleged debts to creditors other than Singota, including over $40,000 to her parents for wedding expenses, unpaid legal fees to her Indiana Litigation counsel, purported 'potential claims of Ms. Green,' and 'about $5,000 in credit card debt.'"  Singota Br., ECF No. 10-1, at 61 (citing the Objection Order, ECF No. 1, at 31).  Ms. Attariwala explains that the bankruptcy schedules, as well as her unrebutted testimony, support these claims by her parents and legal counsel, and Singota's papers support the expert witness fees due to Ms. Green.  Attariwala Br., ECF No. 13, at 22-23.   Singota contends however that neither parents, counsel, nor Ms. Green filed claims in this case, and the credit card claims were only about $5,000.00.  *Id.*, at 61.  Singota concludes therefore that the "only real debt Attariwala seeks to discharge in this case is her unliquidated

liability to Singota," Singota Br., ECF No. 10-1, at 62, and therefore, because this is a two-party dispute, that should weigh against finding good faith.

The Court notes that this information about creditors was known to and considered by the Bankruptcy Court when it approved the Chapter 13 Plan and overruled the objections thereto. Judge Gunn noted that Ms. Attariwala was making payments to the secured lenders on her home and car outside of the Plan, and that while she had significant creditors, as indicated in her schedules, the only timely filed claims were made by credit card companies and Singota. Objection Order, ECF No. 1, at 31. Judge Gunn agreed with Judge Teel's finding in the Oral Ruling that Ms. Attariwala needed financial rehabilitation and sought to complete such rehabilitation through this chapter 13 case. *Id.* Accordingly, because Ms. Attariwala had additional creditors – albeit, some that did not make timely claims and some secured creditors being paid outside the Plan – and this information was clearly known and considered by the Bankruptcy Court, Singota has presented no grounds for a finding of clear error regarding the "nature and amount of secured claims" factor.

### d. Prior Bankruptcy Filings

Singota concedes that Ms. Attariwala has not previously filed for bankruptcy.

### e. Honesty in Disclosure

Singota contends that the Bankruptcy Court "correctly found there 'is evidence in this case that [Ms. Attariwala] delayed or potentially intentionally failed to disclose certain assets.'" Attariwala Br., ECF No. 10-1, at 62 (citing Objection Order at 35).[5] Furthermore, Singota notes that Ms. Attariwala's "failure

---

[5] Ms. Attariwala notes that she "acceded that any order confirming her bankruptcy plan be held in abeyance pending additional discovery." Attariwala Br., ECF No. 13, at 23-24 (citation omitted). The discovery by Singota was comprehensive; it included her own deposition over the course of three days, as well as her husband's deposition, and Singota obtained third-party discovery from entities and financial institutions. *Id.* at 24.

to timely respond to discovery, particularly discovery due prior to the 2020 Confirmation Hearing, implied an intent to not fully and completely disclose facts related to this case." *Id.* (citing Objection Order at 36). Moreover, Judge Gunn commented that Ms. Attariwala's testimony was "inconsistent" regarding the reasons for delays in producing documents such as bank statements.  Objection Order, ECF No. 1, at 36. Accordingly, the Bankruptcy Court found that "Debtor's conduct as to discovery responses [was] either neutral or weigh[ed] slightly against a finding of good faith." *Id.*  In contrast, the Bankruptcy Court indicated that "as to the honesty of the Debtor's schedules as to the valuation of Honey Ji's [noted by the Bankruptcy Court to be a defunct company without value for sale or otherwise], *id.* at 30, and her engagement ring, the Court f[ound] this factor weighs in favor of a finding of good faith." *Id.* at 37.

Singota does not (and cannot) argue that the Bankruptcy Court did not consider or weigh this factor regarding Ms. Attariwala's honesty, as Singota's argument references the Bankruptcy Court's finding on this factor.  Instead, Singota asserts generally that the Bankruptcy Court "failed to view [Ms.] Attariwala's evasions in discovery within the totality of the circumstances." Singota Br., ECF No. 10-1, at 63.  And Singota attempts to link Ms. Attariwala's delayed production of banking statements with her alleged contempt in failing to comply with the Expenses Orders.  *Id.*  As noted previously herein, the Bankruptcy Court acknowledged and factored into its good faith determination Ms. Attariwala's actions in connection with the Indiana Litigation.  Furthermore, Singota has not and cannot ascribe error, such as if the Bankruptcy Court failed to recognize, or weigh, Ms. Attariwala's honesty in disclosing facts of the case. Accordingly, Singota's argument that the Bankruptcy Court erred when it failed to link Ms. Attariwala's honesty in disclosing facts of the case to her failure to abide by Indiana court orders fails as a ground to overturn the Bankruptcy Court Orders.

**f. Nature of Pre-Petition Conduct**

**(i) Allegations of Misappropriation of Singota's Information**

Singota contends that the Bankruptcy Court recognized that Ms. Attariwala's debts flow from alleged misappropriation of confidential and trade secret information, Objection Order, ECF No. 1, at 37-38.  Singota disagrees however with the Bankruptcy Court's statement that "[a]s of the date of the 2022 Confirmation Hearing, the Indiana Litigation was still in mostly nascent stages without a determination" of the issues raised therein.  Objection Order, ECF No. 1, at 38.  Singota focuses solely upon the Indiana Federal Court's preliminary injunction, which "expressly found that Singota was likely to succeed on the merits of its claims."  Singota Br., ECF No. 10-1, at 64 (citation omitted).  That statement (discussing the preliminary injunction) does not however contradict the Bankruptcy Court's comment that there was not yet a determination on the issues raised by both parties in the Indiana Litigation.

Furthermore, while Singota alleges that there is "ample evidence" that Ms. Attariwala "misappropriated a vast amount of Singota ESI [electronically stored information]," Singota Br., ECF No. 10-1, at 64 -- which is an issue for the Indiana federal court to decide – there is no indication that the Bankruptcy Court committed any clear error when considering the Debtor's pre-petition conduct in this regard.[6]  In fact, Judge Gunn explained that for "purposes of this case and the question of confirmation, the question is the nature and character of the Debtor's conduct giving rise to the filing of her petition on the Petition Date," and one factor is her conduct in the Indiana Litigation, which resulted in "out of the ordinary expenses (legal fees and court-ordered payments)."  Objection Order, ECF No. 1, at 38.  Furthermore, Judge Gunn noted that Judge Teel "addressed the allegations of the characterization of the Debtor's actions

---

[6] Ms. Singota agrees that she "acted rashly and ill-advisedly" when she left employment with Singota, but she contests the characterization; *i.e.*, that she took "vast amounts" of information.  Attariwala Br., ECF No. 13, at 24.

in the Indiana Litigation," and while the Bankruptcy Court "does not condone the conduct, and [ ] her debts are arguably much higher as a result, the Debtor is nevertheless in need of financial restructuring." *Id.*[7] Accordingly, Singota fails to demonstrate any clear error regarding the Bankruptcy Court's evaluation of Ms. Attariwala's pre-petition conduct (the alleged misappropriation) in its analysis of good faith.

### (ii) Pre-Petition Payments

Singota argues that the Bankruptcy Court "wrongly dismissed concerns regarding [Ms.] Attariwala's numerous non-ordinary pre-petition payments," including extra payments on her mortgage loan, car loans, homeowner's association fees, and her spouse's student loans, which were made from the non-retirement portion of her 6232 Account. Singota Br., ECF No. 10-1, at 64-65 (citations omitted). Ms. Attariwala asserts that it is "well settled . . . that converting nonexempt assets to exempt property does not constitute a fraud on creditor and is, in fact, an accepted practice." Attariwala Br., ECF No. 13, at 25-26 (string citing cases from several circuits and various district courts); *see e.g., In re Addison*, 540 F.3d 805, 812-813 (8th Cir. 2008) (conversion of nonexempt assets to exempt assets not made with intent to defraud creditors).

The Bankruptcy Court analyzed this issue and found that:

The mere fact that pre-bankruptcy planning has occurred is not indicative of bad faith as such. *In re Chilhowee R-IV School Dist.*, 145 B.R. 981, 983 (Bankr. W.D. Mo. 1992). There is nothing inappropriate in an individual planning for the worst while hoping for the best. Unfortunately for the Debtor, she did ultimately need to file this case. The total value of the non-retirement portion of the 6232 Account in April 2019 was $31,501.48, and by the time her petition was filed the non-retirement portion was at $0. Ex. AA. If all the funds in her 6232 Account or even all of the Debtor's Accounts had been diverted to pre-payments on secured loans, HOA fees, or other debts, the question of bad faith might be more difficult. However, in this case only $9,863.85 or just over 31% of the 6232 funds went towards the pre-payments, the balance went towards the payment of ongoing expenses including a significant amount towards her counsel in the Indiana Federal Court

---

[7] The Bankruptcy Court noted also that while bankruptcy law would have permitted a chapter 13 plan with a three-year duration, Ms. Attariwala voluntarily extended that to five years. 11 U.S.C. §1325(b)(4); Oral Ruling 293:12-15.

and this case. Further 85% of her funds on hand as of April 2019 went towards payments of legitimate ongoing costs such as attorneys' fees and living expenses. As such the Court finds that the Debtor has not "crossed the proverbial line" with respect to prebankruptcy planning.

Objection Order, ECF No. 1, at 39-40 (concluding that the "Debtor's prebankruptcy planning is not evidence of bad faith, but instead is evidence of increased prepetition costs and good prepetition legal advice").

Singota alleges – without citing any legal authority – that "the Bankruptcy Court erred in this analysis as a matter of law." Singota Br., ECF No. 10-1, at 66. Singota focuses, yet again, on the Orders issued during the Indiana Litigation, and Singota argues that the Bankruptcy Court's references to these Orders constitutes an inappropriate attempted "re-litigat[ion]" of such Orders by the Bankruptcy Court. Singota Br., ECF No. 10-1, at 67; *see, e.g., Koker v. Aurora Loan Servicing*, 915 F. Supp. 2d 51, 62 (D.D.C. 2013) ("This Court is in no position to second guess the Superior Court's imposition of sanctions (. . .).")

This Court has reviewed the Bankruptcy Court's statements that were cited by Singota in support of this argument. Singota Br., ECF No. 10-1, at 66-67.[8] The Bankruptcy Court discussed the pre-petition Indiana State Court litigation, as part of the factual background in this case, and its statements therein were

_____

[8] For example, the Bankruptcy Court stated that "the Indiana State Court ordered the Debtor to pay $55,000 to the clerk's account to fund Ms. Green's work, without finding or consideration of the Debtor's ability to pay . . ." Singota Br., ECF No. 10-1, at 67 (citing Objection Order, ECF No. 1, at 17-18). This Court notes that this statement was prefaced by an acknowledgement that Debtor disputed the validity of the April 16, 2019 civil contempt order because she argued that there was no consideration of her ability to pay. Objection Order, ECF No. 1, at 22 (referencing Tr. Aug. 16, 2022 at 71:3-7). The Indiana State Court continued a proceeding to April 17, 2019, without Debtor present, and counsel discussed that Ms. Attariwala might be responsible for up to $55,000 to fund Ms. Green's work, without inquiry as to Debtor's ability to fund these amounts. The hearing was continued to the next day, again without Debtor being present.

based on and included references to the record in the Indiana Litigation.[9]  As such, Singota misconstrues the Bankruptcy Court's setting forth facts as trying to "re-litigate."  Furthermore, the Bankruptcy Court made no independent findings as to propriety of the imposition of sanctions, and in fact, Ms. Attariwala's debt to Ms. Green was recognized as part of the proposed Bankruptcy Plan.   In the instant case, Judge Gunn noted that Singota "fought aggressively" for its preference that Ms. Attariwala use all or part of these funds to pay for Ms. Green's fees.  Objection Order, ECF No. 1, at 40.   Furthermore, the Bankruptcy Court recognized that "aggressive creditors . . . put debtors between the proverbial rock and a hard place," *id.*, but commented that "a prospective debtor is not required to exhaust all avenues of recourse in relation to pending litigation before seeking the breathing spell refuge of bankruptcy relief." *In re Stephens*, Case Nos. 21-40817-elm-11, 21-41011-elm-11, 2022 Bankr. LEXIS 433m, at *24 (Bankr. N.D. Tex. Feb. 22, 2022). Accordingly, considering the entire record in this case, this Court finds that Singota has failed to demonstrate any clear error by the Bankruptcy Court in its consideration of Ms. Attariwala's pre-petition payments as part of its good faith analysis.

### g. Dischargeability of Debts in a Chapter 7 Proceeding

Judge Gunn indicated that except for "Singota's presently unliquidated and highly disputed claim [based upon the Indiana Litigation], all of the Debtor's other claims would be dischargeable in a chapter 7 proceeding."  Objection Order, ECF No. 1, at 40 (citations omitted).   Furthermore, Judge Teel noted previously the "interrelated nature of the Indiana Litigation and the adversary proceeding." *Id.* (citations omitted).  Judge Gunn commented that "because Singota was granted relief from the automatic stay in this

---

[9] This Court notes that the language in the Objection Order regarding these statements cites to the record from the Indiana Litigation, specifically: Tr. Aug. 16, 2022 at 31:6-9, 35:15, 71:3; Ex. G at 41:6 (where counsel represented to the Indiana State Court that Ms. Attariwala did not have that kind of money); Ex. G (generally); and Ex. H at 3:7; 92:8.

case, the adversary proceeding has remained dormant pending resolution of the case in the Indiana Federal Court [and] . . . there is an allegation that, if successful, all of part of Singota's claim may be nondischargeable under both §523(a)(4) if the Debtor's case were to convert to chapter 7 and pursuant to §1328(a)(2)." *Id.* at 41. Accordingly, the Bankruptcy Court concluded that "there is no greater relief to the Debtor in this case than in a chapter 7 case, and this factor supports a finding of good faith." *Id.*

Singota seemingly acknowledges this conclusion when it indicates that it will argue that Ms. Attariwala's liabilities are "non-dischargeable under 11 U.S.C. §1328(a)(2), which incorporates §524(a)(4) (liabilities 'for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny')". Singota Br., ECF No. 10-1, at 68-69. Singota does however note that, under Chapter 7, there could be an additional potentially applicable ground, pursuant to 11 U.S.C. §523(a)(6) (no discharge for liabilities "for willful and malicious injury by the debtor to another entity or to the property of another entity"), but Singota provides no additional information about the availability of this potential ground. Accordingly, because there is a remedy under Chapter 7 that is also incorporated into the remedy under Chapter 13, this Court finds that the Bankruptcy Court's finding –that this factor (dischargeability of debts in a Chapter 7 proceeding) weighs in favor of good faith – is not clearly erroneous.

**h. Other Unusual or Exceptional Problems**

Singota asserts generally that while Ms. Attariwala has characterized Singota as an "aggressive litigant," the "problems [she] faces are ones over which she has substantial control" insofar as she has largely "driven the Indiana Litigation." Singota Br., ECF No. 10-1 at 69. Ms. Attariwala disputes both that characterization of Singota and the characterization of herself, Attariwala Br., ECF No. 13, at 28, explaining that it was the Bankruptcy Court that characterized the Indiana Litigation as "aggressive and voluminous." *See* Objection Order, ECF No. 1, at 41. While the Bankruptcy Court concluded that the Debtor has "at times, not made her situation easy on herself," the Bankruptcy Court noted that "the very apparent hostile

situation that has arisen from this particular ongoing litigation is at an unusual level for most chapter 13 debtors." *Id.*   Notwithstanding that commentary, the Bankruptcy Court found that this "unusual circumstances" factor "does not weigh specifically in favor of or against good faith, but instead is an overarching consideration applied to the Court's totality of the circumstances analysis." *Id.*   As such, this Court finds that Singota has not demonstrated any clear error regarding the way in which the Bankruptcy Court considered this factor (unusual or exceptional problems) in its analysis of good faith.

### IV. CONCLUSION

In the instant case, Singota presented two challenges to the Bankruptcy Court's Order Overruling Singota's Objection to Confirmation and Order Confirming the Plan, namely: (1) that the Bankruptcy Court did not give due weight to Ms. Attariwala's alleged contempt of the Indiana Court orders; and (2) the Bankruptcy Court erred in finding that Ms. Attariwala's bankruptcy filing was in good faith, specifically in its consideration of eight factors, seven of which were challenged by Singota.   Applying a "clearly erroneous standard" to the Bankruptcy Court's factual findings, as explained in detail herein, this Court found no clear error by the Bankruptcy Court in its analysis of the totality of the circumstances (consideration of the eight factors) and resultant finding of good faith.   Nor did the Bankruptcy Court err in the weight accorded to Ms. Attariwala's behavior regarding the Indiana Court orders.   Accordingly, Singota's challenges to the Bankruptcy Court Orders fail, and the challenged Orders are AFFIRMED by this Court.  A separate Order accompanies this Memorandum Opinion.

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE